IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: ASBESTOS LITIGATION | ) |
| | ) |
| JOHN A. PIENO, JR., and DIONE PIENO, his wife, | ) ) ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civil Action No. 16-1119-LPS-SRF |
| | ) |
| ATWOOD MORRILL CO., et al., | ) |
| | ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

Presently before the court in this asbestos-related personal injury action are the motions for summary judgment of defendants Crosby Valve LLC ("Crosby"), The Fairbanks Company ("Fairbanks"), BorgWarner Morse Tec LLC[1] ("BorgWarner"), Flowserve U.S. Inc.[2] ("Flowserve"), and Warren Pumps LLC ("Warren") (collectively, "Defendants"). (D.I. 138; D.I. 140; D.I. 145; D.I. 148; D.I. 153)[3] Plaintiffs John A. Pieno, Jr. ("Mr. Pieno") and Dione Pieno, his wife, (together, "Plaintiffs") did not respond to these motions. As indicated in the chart *infra* and for the reasons that follow, the court recommends GRANTING Defendants' motions for summary judgment.

| | Motion for Summary Judgment |
|---|---|
| Crosby Valve LLC | GRANT |

---

[1] BorgWarner is a successor by merger to Borg-Warner Corporation. (D.I. 147 at 4)

[2] Flowserve is a successor to Edward Vogt Valve Company, Vogt Valve Co., Nordstrom Valves, Inc., Edward Valves, Inc., and Rockwell Manufacturing Company. (D.I. 54 at ¶ 8)

[3] All briefing associated with these motions can be found at D.I. 139; D.I. 143; D.I. 147; D.I. 149; D.I. 154.

| The Fairbanks Company | GRANT |
| BorgWarner Morse Tec LLC | GRANT |
| Flowserve U.S. Inc. | GRANT |
| Warren Pumps | GRANT |

## II. BACKGROUND

### A. Procedural History

On October 19, 2016, Plaintiffs originally filed this personal injury action against multiple defendants in the Superior Court of Delaware, asserting claims arising from Mr. Pieno's alleged harmful exposure to asbestos. (D.I. 1, Ex. A) On December 2, 2016, the case was removed to this court by defendant Crane Co. pursuant to 28 U.S.C. §§ 1442(a)(1), the federal officer removal statue,[4] and 1446. (D.I. 1) On March 31, 2017, Plaintiffs filed an amended complaint. (D.I. 54) On April 17, 2018, Crosby, Fairbanks, BorgWarner, Flowserve, and Warren filed the pending motions for summary judgment, individually.[5] (D.I. 138; D.I. 140; D.I. 145; D.I. 148; D.I. 153) Plaintiffs did not respond to these motions.

### B. Facts

#### 1. Mr. Pieno's Alleged Exposure History

Plaintiffs allege that Mr. Pieno developed mesothelioma as a result of exposure to asbestos-containing materials during his service in the Navy, as well as from his civilian work as a salesman and mechanic for Western Auto, and personal automotive and home renovation work. (D.I. 54 at ¶¶ 3-4, 14) Plaintiffs contend that Mr. Pieno was injured due to exposure to asbestos-

---

[4] The federal officer removal statute permits removal of a state court action to federal court when, *inter alia*, such action is brought against "[t]he United States or an agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office." 28 U.S.C. § 1442(a)(1).

[5] On May 4 and 8, 2018, defendants Crosby Valve and Flowserve, respectively, wrote to the court advising that their respective motions were not opposed. (D.I. 158; D.I. 160)

2

containing products that Defendants manufactured, sold, distributed, licensed, or installed. (*Id.* at ¶¶ 5, 9) Accordingly, Plaintiffs asserts claims for negligence, willful and wanton conduct, strict liability, and loss of consortium. (*Id.* at 9-15)

Mr. Pieno was deposed on January 11 and 12, 2017. (D.I. 27) Plaintiffs did not produce any other fact or product identification witnesses for deposition.[6] From 1954 to 1962, Mr. Pieno was employed as a salesman and mechanic at Western Auto, in Gretna, Louisiana. (D.I. 54 at ¶ 3) From 1962 to 1990, Mr. Pieno served in the United States Navy as an aircraft pilot. (D.I. 54 at ¶ 3)

Mr. Pieno began basic training and the aviation program in 1962, where he learned to fly aircraft until 1964. (D.I. 149, Ex. A at 27:20-32:15) In in 1965, after training, Mr. Pieno was assigned to a fleet squadron attached to the USS America ("the America"). (*Id.* at 32:9-33:16) Occasionally, he visited the machinery spaces and observed others working on pumps and valves, however, he could not recall a specific manufacturer's product aboard the America, nor what type of repairs were performed. (D.I. 154, Ex. A at 157:8-159:5)

In 1970, Mr. Pieno's squadron was attached to the USS Saratoga ("the Saratoga"), where he continued his duties as a pilot. (*Id.* at 161:18-162:9) He occasionally visited the machinery spaces of the Saratoga, but did not recall the manufacturer of any piece of equipment nor any type of repair performed in his presence. (*Id.* at 169:19-170:4)

Around 1975, after leaving the Saratoga, Mr. Pieno returned to the America. (*Id.* at 170:5-10) In addition to being a pilot, he served as a maintenance officer for the aircraft. (*Id.* at 171:14-23) Mr. Pieno did not go into the machinery spaces of the America during his second

---

[6] The deadline for completion of depositions of all co-worker, product identification, and other exposure testimony witnesses was September 14, 2017. (D.I. 45 at 3)

3

assignment. (*Id.* at 172:19-21) He did not recall the manufacturer of any piece of equipment aboard the America, or any repairs that were performed in his presence. (*Id.* at 172:22-173:4)

In 1976, Mr. Pieno was assigned to the USS Nimitz. (*Id.* at 173:5-6) Mr. Pieno served as a pilot, and was responsible for walking through the ship and observing what was happening aboard the carrier. (*Id.* at 173:21-174:25) He did not spend time in the machinery spaces, and did not know who manufactured any equipment aboard, nor any repairs that were performed in his presence. (*Id.* at 175:2-15) In 1981, Mr. Pieno joined the USS John. F. Kennedy ("the JFK") as an Executive Officer. (*Id.* at 175:14-22) While the ship was in dry dock, Mr. Pieno was present when a boiler was repaired and its external lagging removed, creating dust. (*Id.* at 178:20-179:17) However, he had no recollection of a particular manufacturer's product that was removed or installed in his presence. (*Id.* at 183:3-9)

In approximately 1984, Mr. Pieno became Commanding Officer of the USS Savannah ("the Savannah"), a supply ship. (*Id.* at 183:20-24) As captain of the Savannah, Mr. Pieno was not personally involved in the repair and maintenance of equipment. (*Id.* at 184:8-185:21) Mr. Pieno recalled pumps and valves being removed and repaired, but could not recall their location aboard the ship or their manufacturer. (*Id.* at 186:8-25)

In approximately 1986, Mr. Pieno served as Captain of the USS Forrestal. (*Id.* at 187:16-188:1) Mr. Pieno recalled a turbine being repaired during his tenure, but he did not recall any other repair to any other piece of equipment, and he did not know the manufacturer of any equipment. (*Id.* at 188:2-22)

### 2. Plaintiffs' Product Identification Evidence

#### a. Crosby

Mr. Pieno did not initially recall Crosby as a manufacturer of valves that he encountered

4

during his naval career. (D.I. 139, Ex. C at 51:11-16) Mr. Pieno recalled the Crosby name after his counsel showed him his own interrogatory answers to "refresh his memory." (*Id.* at 74:5-16) Mr. Pieno stated that he did not work on these alleged Crosby valves, however, he only recalled seeing others working on them. (*Id.*) Mr. Pieno could not identify a specific manufacturer of valves, or any equipment, on any particular ship. (*Id.* at 86:1-4) Mr. Pieno could not identify the manufacturer of any valve that was serviced or replaced while he was present. (*Id.*, Ex. D at 196:10-17)

### b. Fairbanks

Mr. Pieno named Fairbanks as a manufacturer of pumps that he recalled encountering during his naval career. (D.I. 143, Ex. A at 50:22-51:4) Mr. Pieno also recalled Fairbanks as a manufacturer of valves after his counsel showed him his own interrogatory answers to "refresh his memory." (*Id.* at 74:5-16) Mr. Pieno did not provide any testimony regarding his personal work with Fairbanks valves, and did not provide any identifying information regarding Fairbanks valves. (*See id.*)

### c. BorgWarner

Mr. Pieno did not identify an asbestos-containing BorgWarner product. (*See* D.I. 149, Exs. A-C)

### d. Flowserve

Mr. Pieno did not initially recall Flowserve as a manufacturer of valves that he encountered during his naval career. (D.I. 149, Ex. A at 71-73) Mr. Pieno recalled Flowserve products after his counsel showed him his own interrogatory answers to "refresh his memory." (*Id.* at 74:5-16) Mr. Pieno could not identify any particular ship where Flowserve valves were located. (*Id.* at 75:24-76:6; Ex. C at 242:23-243:2) He stated that the manufacturers of valves he

5

identified were names that he had read on a plaque or on a piece of equipment sometime during his naval career. (*Id.*, Ex. A at 79:6-17) Mr. Pieno could not provide any description of Flowserve valves, such as their size, type, application, color, model number, pressure rating, or age. (*Id.* at 244:5-15)

### e. Warren Pumps

Mr. Pieno generally recognized the name Warren as a pump manufacturer, but he could not recall ever being present when packing or a flange gasket connected to pumps manufactured by Warren was replaced. (D.I. 154, Ex. A at 246:11-23) Mr. Pieno could not testify to the function of any Warren product, the types of pumps he encountered, the material flowing through them, the year of manufacture, or model or serial numbers. (*Id.* at 246:20-248:15) Mr. Pieno did not personally install, remove, or maintain any pump, regardless of the manufacturer. (*Id.* at 248:20-249:5)

### III. LEGAL STANDARD

#### A. Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that could affect the outcome of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (citing *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The moving party bears the initial burden of proving the absence of a genuinely disputed material fact. *See Celotex*, 477 U.S. at 321. The burden then shifts to the non-movant to

6

demonstrate the existence of a genuine issue for trial, and the court must view the evidence in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460-61 (3d Cir. 1989); *Scott v. Harris*, 550 U.S. 372, 380 (2007). An assertion that a fact cannot be—or, alternatively, is—genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). To defeat a motion for summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" rather, there must be enough evidence to enable a jury to reasonably find for the non-moving party on the issue. *See Anderson*, 477 U.S. at 247-49. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex*, 477 U.S. at 322. If the non-movant fails to make a sufficient showing on an essential element of its case on which it bears the burden of proof, then the movant is entitled to judgment as a matter of law. *See Celotex*, 477 U.S. at 322.

If a party fails to address another party's assertion of fact, the court may consider the fact undisputed, or grant summary judgment if the facts show that the movant is entitled to it. Fed. R.

7

Civ. P. 56(e)(2)–(3).[7] A plaintiff's failure to respond "is not alone a sufficient basis for the entry of a summary judgment." *Anchorage Assocs. v. Virgin Islands Bd. Of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990). Even where a party does not file a responsive submission to oppose the motion, the court must still find that the undisputed facts warrant judgment as a matter of law. *Miller v. Ashcroft*, 76 F. App'x 457, 462 (3d Cir. 2003) (citing Fed. R. Civ. P. 56; *Lorenzo v. Griffith*, 12 F.3d 23, 28 (3d Cir. 1993)). In other words, the court must still determine whether the unopposed motion for summary judgment "has been properly made and supported." *Williams v. Murray, Inc.*, 2014 WL 3783878, *2 (D.N.J. July 31, 2014) (quoting *Muskett v. Certegy Check Svcs., Inc.*, 2010 WL 2710555, at *3 (D.N.J. July 6, 2010)).

### B. Maritime Law

The parties do not dispute that maritime law applies to all issues regarding Naval and sea-based claims. (D.I. 97)

#### 1. Product Identification/Causation

---

[7] This section was added to Rule 56 to overcome cases in the Third Circuit that impaired the utility of the summary judgment device:

> A typical case is as follows: A party supports his motion for summary judgment by affidavits or other evidentiary matters sufficient to show that there is no genuine issue as to a material fact. The adverse party, in opposing the motion, does not produce any evidentiary matter, or produces some but not enough to establish that there is a genuine issue for trial. Instead, the adverse party rests on averments of his pleadings which on their face present an issue.

Fed. R. Civ. P. 56(e) advisory committee's note. Before the amendment, the Third Circuit would have denied summary judgment if the averments were "well-pleaded," and not conclusory. *Id.* However, the Advisory Committee noted that summary judgment is meant to pierce the pleadings and to assess proof to see whether there is a genuine need for trial. *Id.* Accordingly, the pre-amendment Third Circuit precedent was incompatible with the basic purpose of the rule. *Id.* The amendment recognizes that, "despite the best efforts of counsel to make his pleadings accurate, they may be overwhelmingly contradicted by the proof available to his adversary." *Id.* The amendment, however, was not designed to affect the ordinary standard applicable to summary judgment. *Id.*

In order to establish causation in an asbestos claim under maritime law, a plaintiff must show, for each defendant, "(1) that he was exposed to the defendant's product, and (2) that the product was a substantial factor[8] in causing the injury he suffered." *Lindstrom v. A-C Prod. Liab. Trust*, 424 F.3d 488, 492 (6th Cir. 2005) (citing *Stark v. Armstrong World Indus., Inc.*, 21 F. Appx. 371, 375 (6th Cir. 2001)); *Dumas v. ABB Grp., Inc.*, 2015 WL 5766460, at *8 (D. Del. Sept. 30, 2015), *report and recommendation adopted*, 2016 WL 310724 (D. Del. Jan. 26, 2016); *Mitchell v. Atwood & Morrill Co.*, 2016 WL 4522172, at *3 (D. Del. Aug. 29, 2016), *report and recommendation adopted*, 2016 WL 5122668 (D. Del. Sept. 19, 2016); *Denbow v. Air & Liquid Sys. Corp.*, 2017 WL 1199732, at *4 (D. Del. Mar. 30, 2017), *report and recommendation adopted*, 2017 WL 1427247 (D. Del. Apr. 19, 2017).[9]

"In establishing causation, a plaintiff may rely upon direct evidence (such as testimony of

---

[8] "Maritime law incorporates traditional 'substantial factor' causation principles, and courts often look to the Restatement (Second) of Torts for a more helpful definition." *Delatte v. A.W. Chesterton Co.*, 2011 WL 11439126, at *1 n.1 (E.D. Pa. Feb. 28, 2011). The comments to the Restatement indicate that the word "substantial," in this context, "denote[s] the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause, using that word in the popular sense, in which there always lurks the idea of responsibility." Restatement (Second) of Torts § 431 cmt. a (1965).

[9] Previously, courts in this Circuit recognized a third element and required a plaintiff to "show that (3) the defendant manufactured or distributed the asbestos-containing product to which exposure is alleged," *Abbay v. Armstrong Int'l, Inc.*, 2012 WL 975837, at *1 n.1 (E.D. Pa. Feb. 29, 2012), because the majority of federal courts have held that, under maritime law, a manufacturer has no liability for harms caused by, and no duty to warn about hazards associated with, a product it did not manufacture or distribute. This is also referred to as the "bare metal" defense. *See Dalton v. 3M Co.*, 2013 WL 4886658, at *7 (D. Del. Sept. 12, 2013) (citing cases); *Conner v. Alfa Laval, Inc.*, 842 F. Supp. 2d 791, 801 (E.D. Pa. 2012). However, the Third Circuit recently rejected the bare metal defense, and held that a manufacturer of a "bare metal" product may be held liable for injuries sustained from later-added asbestos-containing materials, if the facts show that the plaintiff's injuries were a reasonably foreseeable result of the manufacturer's failure to provide a reasonable and adequate warning. *In re: Asbestos Prod. Liab. Litig. (DeVries)*, 873 F.3d 232, 240 (3d Cir. 2017). This decision is currently under review by the Supreme Court of United States; on May 14, 2018, the Supreme Court granted the Petition for a Writ of Certiorari of the *Devries* decision. *See Air & Liquid Sys. Corp. v. Devries*, No. 17-1104, 2018 WL 753606 (U.S. May 14, 2018).

9

the plaintiff or decedent who experienced the exposure, co-worker testimony, or eye-witness testimony) or circumstantial evidence that will support an inference that there was exposure to the defendant's product for some length of time."[10] *Abbay v. Armstrong Int'l, Inc.*, 2012 WL 975837, at *1 n.1 (E.D. Pa. Feb. 29, 2012) (citing *Stark*, 21 F. Appx. at 376). On the other hand, "'[m]inimal exposure' to a defendant's product is insufficient to establish causation. Likewise, a mere showing that defendant's product was present somewhere at plaintiff's place of work is insufficient." *Lindstrom*, 424 F.3d at 492 (quoting *Stark*, 21 F. Appx. at 376). "Rather, the plaintiff must show 'a high enough level of exposure that an inference that the asbestos was a substantial factor in the injury is more than conjectural.'" *Abbay*, 2012 WL 975837, at *1 n.1 (quoting *Lindstrom*, 424 F.3d at 492). "Total failure to show that the defect caused or contributed to the accident will foreclose as a matter of law a finding of strict product[] liability." *Stark*, 21 F. Appx. at 376 (citations omitted).

### C. Florida Law

The parties do not dispute that Florida law applies to all land based claims. (D.I. 97)

#### 1. Product Identification/Causation

The Florida Supreme Court has not articulated a standard of causation necessary to survive summary judgment in asbestos cases, and lower Florida courts have rejected the "frequency, regularity, and proximity" test, which has been adopted in many courts throughout the nation. *Hays v. A.W. Chesterton, Inc.*, 2012 WL 3096534, at *1 (E.D. Pa. Apr. 19, 2012) (applying Florida law). To bring a claim under Florida law, a plaintiff must simply show that a

---

[10] However, "'substantial exposure is necessary to draw an inference from circumstantial evidence that the exposure was a substantial factor in causing the injury.'" *Stark*, 21 F. Appx. at 376 (quoting *Harbour v. Armstrong World Indus., Inc.*, 1991 WL 65201, at *4 (6th Cir. April 25, 1991)).

10

defendant's product was a "substantial contributing factor" to the injury that occurred.[11] *Faddish v. General Electric Co.*, 2010 WL 4146108, at *3-4 (E.P. Pa. Oct. 20, 2010) (citing Asbestos and Silica Compensation Fairness Act, Fla. Stat. § 774.205). If a defendant's products are identified in a given case, "traditional" methods of finding causation apply. *Celotex Corp. v. Copeland*, 471 So.2d 533, 536 (Fla. 1985). The traditional method of establishing causation in negligence (e.g., failure to warn) cases requires the plaintiff to "introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a substantial factor in bringing about the result." *Gooding v. University Hospital Bldg, Inc.*, 445 So.2d 1015 (Fla. 1984) (quoting Prosser, Law of Torts § 41 (4th Ed. 1971)).

## IV. DISCUSSION

### A. Crosby Valve

The court recommends granting Crosby's motion for summary judgment, because there is no genuine issue of material fact in dispute as to whether Mr. Pieno was exposed to an asbestos-containing Crosby product. During his deposition, Mr. Pieno did not identify any Crosby valve aboard any particular ship. (D.I. 139, Ex. C at 86:1-14) Mr. Pieno did not perform any work on Crosby valves, and Mr. Pieno could only generally recall the name Crosby as a brand of valve that may have been serviced by others while he was present; however, Mr. Pieno could not specifically identify the manufacturer of any valve that was serviced or replaced when he was present. (*Id.* at 74:5-16; Ex. D at 196:10-17) Moreover, Crosby introduced evidence, undisputed by Plaintiffs, that even if Crosby valves were present on the ships associated with Mr. Pieno's

---

[11] A strict liability claim brought under Florida law also requires a plaintiff to establish, *inter alia*, the existence of a proximate causal connection between the injury at issue and the defect or unreasonably dangerous condition of the product at issue. *See Edward M. Chadbourne, Inc. v. Vaughn*, 491 So.2d 551, 553 (Fla. 1986); *Bailey v. Janssen Pharmaceutica, Inc.*, 288 F. App'x 597, 605 (11th Cir. 2008).

11

service, such valves were not designed for use with asbestos materials or insulation. (*Id.*, Ex. A) Therefore, summary judgment should be granted.

### B. Fairbanks

The court recommends granting Fairbanks' motion for summary judgment, because there is no genuine issue of material fact in dispute as to whether Mr. Pieno was exposed to an asbestos-containing Fairbanks product. During his deposition, Mr. Pieno did not identify any Fairbanks valve aboard any particular ship, and did not testify about working with or around Fairbanks products. (*See* D.I. 143, Ex. A) Mr. Pieno could only generally recall the name Fairbanks as a brand of valves after reading his previous interrogatory responses. (*Id.* at 74:5-16) Therefore, summary judgment should be granted

### C. BorgWarner

The court recommends granting BorgWarner's motion for summary judgment, because there is no genuine issue of material fact in dispute as to whether Mr. Pieno was exposed to an asbestos-containing BorgWarner product. During his deposition, Mr. Pieno did not identify any BorgWarner clutches or friction products as products he may have worked with or near at any time during the course of his employment. (*See* D.I. 149, Exs. A-C) Therefore, summary judgment should be granted under Florida law.

### D. Flowserve

The court recommends granting Flowserve's motion for summary judgment, because there is no genuine issue of material fact in dispute as to whether Mr. Pieno was exposed to an asbestos-containing Flowserve product. Mr. Pieno served as an aircraft pilot on naval ships, and did not personally perform maintenance on equipment onboard these naval ships; instead, Mr. Pieno alleges exposure onboard ships in which maintenance was being performed by others who

12

removed or replaced insulation, gaskets, and packing on valves. (D.I. 149, Ex. A at 95:3-99:25) However, Mr. Pieno could not place any Flowserve (Rockwell, Edwards, or Vogt) valves on any particular ship. (*Id.* at 75:24-76:6; Ex. C at 242:23-243:2) Mr. Pieno could not provide any description of Flowserve valves, such as their size, type, application, color, model number, pressure rating, age, or any distinguishing characteristics of their physical appearance. (*Id.*, Ex. C at 244:5-15) Therefore, summary judgment should be granted.

### E. Warren Pumps

The court recommends granting Warren's motion for summary judgment, because there is no genuine issue of material fact in dispute as to whether Mr. Pieno was exposed to an asbestos-containing Warren product. During his deposition, Mr. Pieno only generally recalled the name Warren as a manufacturer of pumps, but he could not recall ever being present when packing or a flange gasket connected to a Warren pump was replaced. (D.I. 154, Ex. A at 246:11-23) Mr. Pieno did not personally install, remove, or maintain any Warren pumps connected to a particular ship's piping system. (*Id.* at 248:20-249:5) Mr. Pieno could not testify to the function of any Warren pump, the type of pumps he encountered, the material flowing through them, the year of manufacture, or model or serial numbers. (*Id.* at 246:20248:15) Therefore, summary judgment should be granted.

### V. CONCLUSION

For the foregoing reasons, and as addressed in the chart *infra*, the court recommends granting Defendants' motions for summary judgment.

| Defendant | Motion for Summary Judgment |
|---|---|
| Crosby Valve LLC | GRANT |
| The Fairbanks Company | GRANT |
| BorgWarner Morse Tec LLC | GRANT |
| Flowserve U.S. Inc. | GRANT |

13

| Warren Pumps | GRANT |

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objection and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: June 26, 2018

Sherry R. Fallon
United States Magistrate Judge